Lynn **BALLOU**, Appellant,

v.

**STATE of Oklahoma, Appellee.**

No. F–83–395.

Court of Criminal Appeals of Oklahoma.

Jan. 21, 1985.

E. Alvin Schay, Jr., Appellate Public Defender, Norman, for appellant.

Michael C. Turpen, Atty. Gen., Tomilou Gentry Liddell, Asst. Atty. Gen., Oklahoma City, for appellee.

## OPINION

PARKS, Presiding Judge:

Appellant, Lynn Ballou, was convicted of Shooting with Intent to Kill under 21 O.S. 1981, § 652 in the Commanche County District Court, Case No. CRF–81–576, sentenced to five (5) years imprisonment, and now appeals. The facts are as follows:

On August 10, 1981, Deputy Sheriff Michael Thomas was called to the home of Ruth Ballou to investigate a report that Mrs. Ballou's ex-husband was breaking and entering her home. The deputy met Mrs. Ballou at a nearby pre-arranged site, and then followed her to the residence in rural Commanche county. Upon arrival at the scene, the deputy approached the house and was met by the appellant. A fight ensued in which the appellant hit the deputy sheriff with his fist, kicking him with his feet. The deputy then went to his patrol car to call radio for a back-up, and the appellant came at him again swinging an axe handle. He continued verbally abusing the officer, and went to his truck, which was parked near the patrol car, and removed a .30 caliber rifle. The deputy sheriff, upon seeing this, retreated to cover himself. The appellant was still yelling and screaming obscenities, and asking the deputy sheriff to kill him. The deputy pulled a service revolver and directed the appellant to drop his weapon. He then dove behind the patrol car as the defendant fired a shot from the rifle. Since Mrs. Ballou was still in the line of fire from the appellant, the deputy sheriff did not return fire until he was sure that Mrs. Ballou was out of the line of fire. The appellant returned fire again, and this time, the deputy sheriff returned fire and again yelled at the defendant for him to surrender. The deputy sheriff fired a third time, hitting the appellant in the hand. The appellant responded that the deputy would have to "to come and get him and would have to shoot him." The deputy then fired three more shots in rapid succession, wounding the appellant in the knee.

The appellant still refused to surrender, and the officer had to wrestle the rifle away from him. Another officer arrived on the scene, Officer Simms, and completed the arrest of the appellant.

At the trial, both officer's testified that they believed that the appellant knew what he was doing and was responsible for his actions, and that they had dealt with many people who were incompetent and that he

appeared to be coherent, although he was excited and nervous. The appellant's ex-wife testified that he had been in and out of mental institutions for the past 13 years; that the appellant was mentally ill on and off in the past. The appellant called a jailer, who testified that the appellant acted peculiarly by repeatedly removing his clothing and flushing them down the toilet, and running his injured hand around the inside of the commode. The jailer testified that he personally believed that the appellant was not mentally competent. The appellant received a mental examination at Eastern State Hospital. The appellant called as his chief witness as to the insanity issue Chief Psychiatrist, R.D. Garcia, from Eastern State Hospital. The doctor testified that he observed the appellant on December 19, 1981, which was over four months since the date of the alleged shooting incident. The doctor diagnosed the appellant as a chronic paranoid schizophrenic. The doctor further testified that he did not believe in his view the appellant knew right from wrong on August 10, 1981, the date of the alleged incident.

## I.

Appellant's first proposition of error is that the trial court improperly overruled the appellant's motion for a directed verdict and motion for a new trial. The appellant's position is that there was not competent evidence introduced by the state to prove that the appellant could distinguish right from wrong on the day of the shooting. The appellant's position is that the evidence clearly overcame the presumption of sanity, and shifted the burden to the prosecution to present evidence which established beyond a reasonable doubt that the appellant was sane when he confronted the deputy. He views the evidence as showing that the prosecution did not overcome that burden.

■ The state, in a criminal prosecution, may rely upon a presumption that the defendant is sane. *Cox v. Page*, 431 P.2d 954 (Okl.Cr.1967). However, when the defendant produces sufficient evidence to raise a reasonable doubt of his sanity, the state then has the burden of proving sanity beyond a reasonable doubt. *Garrett v. State*, 586 P.2d 754 (Okl.Cr.1978). Whether the state has carried its burden of proving the defendant's sanity at the time of the commission of the crime is a question of fact for the jury. *Maghe v. State*, 620 P.2d 433 (Okl.Cr.1980).

■ It can be argued that the testimony of Dr. Garcia was sufficient to raise a reasonable doubt as to Ballou's ability to determine right from wrong at the time he attacked the deputy. There is also sufficient support for the jury's finding that the state proved the appellant's sanity beyond a reasonable doubt. Evidence tending to support the state's position and the jury's conclusion is found by the following: (1) the arresting officers testified that the defendant attempted to resist arrest; (2) the arresting officers testified that appellant appeared then to be coherent and able to determine right from wrong; and (3) the defendant inquired as to where some of his stray shots might have gone, and if they might have damaged any neighbor's property.

This Court ruled in *Tarter v. State*, 359 P.2d 596 (Okl.Cr.1961), that a jury's verdict can stand even if it is not supported by medical proof:

... but only by that of a few lay witnesses on the question of insanity at the time of the shooting. Nevertheless, it was within their province to believe the testimony of the lay witnesses to [sic] disregard of the medical testimony, if they chose to do so. The law makes no distinction in weighing evidence in expert testimony and evidence of other character, and it is for the jury and not the reviewing court to determine the weight to be given such evidence. (Citations omitted), *Tarter, supra*, at 600.

■ This Court has consistently held that it will not interfere with the verdict of a jury on the grounds that the evidence was insufficient unless there is no competent evidence in the record to support the

verdict. *Smith v. State*, 646 P.2d 1285 (Okl.Cr.1982). It is clear from the record that the state offered competent testimony on the question of insanity, even though only by lay witnesses, and it was within the jury's province to believe these witnesses and to disregard the expert testimony. *Bowers v. State*, 648 P.2d 835 (Okl.Cr. 1982). It is clearly a matter of question of fact for the jury to determine as to whether or not the defendant was competent and knew right from wrong on the date of the incident. They had medical testimony and testimony from lay persons. A review of the record supports that the jury's finding was based on competent evidence. Therefore, this proposition is without merit.

## II.

In appellant's second proposition, he alleges that the trial court failed to properly instruct the jury as to a lesser included offense. However, trial counsel failed to object to the trial court's instruction and offered no alternative instructions for the trial court to consider.

We have held in the past that when an objection to instructions does not appear in the record, it is not properly preserved for review by this Court. *Stratton v. State*, 643 P.2d 645 (Okl.Cr.1982); *Garcia v. State*, 639 P.2d 88 (Okl.Cr.1981). In *Lane v. State*, 572 P.2d 991 (Okl.Cr.1978), this Court stated: "Defendant should have stated specifically why he objected to the instructions, and further, should have submitted proposed instructions to the court in writing, in lieu of the instructions which he deemed objectionable." *Lane v. State*, supra at 993.

When, as in cases like these, no request for the lesser included instruction, nor any alternative instructions, were given to the trial court by trial counsel, these cases are reviewed only for fundamental error on appeal. Finding no fundamental error, we hold, in review of the instructions, that they adequately inform the jury of the law as applicable to the case. We hold that the appellant was not denied any fundamental or constitutional rights by the instructions. See *Long v. State*, 654 P.2d 647 (Okl.Cr.1982) and *Kelsey v. State*, 569 P.2d 1028 (Okl.Cr.1977).

This Court has consistently held that an instruction on a lesser included offense need only be given when there is evidence that tends to support the commission of the lesser included offense. *Campbell v. State*, 640 P.2d 1364 (Okl.Cr.1982). In the very same case, we held that the failure to give a requested instruction on the lesser included offense of breaking and entering was not error where the defense of alibi offered by defendant did not suggest any lesser included offense. The same holds true in this case. The appellant's defense is insanity. There was no suggestion of any lesser included offense. We have found that it is not error not to give a lesser included offense instruction when the evidence does not warrant it. *Woods v. State*, 569 P.2d 1004 (Okl.Cr. 1977). The trial court acted properly in not including a lesser included instruction, which would not be warranted by the evidence.

Appellant's third assignment of error is that accumulation of errors in the trial resulted in fundamental errors and justifies reversal of appellant's conviction or modification of the sentence therein. Having not found any of the previous assignments of error having merit and having reviewed the record as a whole, this Court finds this proposition to be without merit. *Black v. State*, 664 P.2d 1054 (Okl.Cr.1983).

For the foregoing reasons, the judgment and sentence appealed from in this case should be, and is hereby, **AFFIRMED.**

BRETT, J., concurs.

BUSSEY, J., concurs in results.