**Kenneth Dewayne DOUGLAS, Appellant,**

v.

**STATE of Oklahoma, Appellee.**

**No. F–88–282.**

Court of Criminal Appeals of Oklahoma.

July 10, 1990.

As Corrected Aug. 8, 1990.

Loretta Jackson, Asst. Public Defender, Tulsa, for appellant.

Robert H. Henry, Atty. Gen., A. Diane Hammons, Asst. Atty. Gen., Oklahoma City, for appellee.

## OPINION

JOHNSON, Judge:

KENNETH DEWAYNE DOUGLAS, appellant, was tried by jury for the crimes of Second Degree Burglary (Count I), Assault With a Dangerous Weapon (Count II), and Escape from Lawful Custody (Count III), all After Former Conviction of Two or More Felonies, in violation of 21 O.S.1981, §§ 1435, 645 and 444 respectively, in Case No. CRF–87–2134 in the District Court of Tulsa County. Appellant was represented by counsel. The jury returned a verdict of guilty and set punishment at twenty-five (25) years imprisonment as to Count I, forty (40) years imprisonment as to Count II and twenty-five (25) years as to Count III. The trial court sentenced appellant accordingly and ordered the sentences to run consecutively. From this Judgment and Sentence, appellant appeals.

Approximately 11:00 p.m. on the evening of July 27, 1987, Barbara Kelly and Bob Maras were leaving Chile's restaurant in Tulsa, Oklahoma, after conducting a business dinner. While in the Chile's parking lot, both heard unusual noises coming from B.J.'s Auto Clinic, located across the street from Chile's. Bob Maras, an off-duty Tulsa police officer, noticed a store window shaking and vibrating. Officer Maras concluded that the store was being robbed and directed Ms. Kelly to go back into Chile's and call the police.

Officer Maras, with his gun drawn, walked over to the auto clinic, looked inside and observed a black male rummaging through the store's cash register. When the man finally came outside, Officer Maras confronted him, informed him that he was under arrest and ordered him to lay on the ground and freeze. Officer Maras slid his handcuffs over to the man and instructed him to handcuff himself.

The man put the handcuffs on his left wrist and then stood up, putting his hands behind his back. The man began walking

toward Officer Maras and claimed that his partner was inside and had a gun. The man looked over Officer Maras' shoulder and shouted, "run, they've got me." Officer Maras became frightened and yelled at the man to freeze. When the man got within arm's length, Officer Maras reached out and put his hand on the man's chest. The man started to raise his right hand and when Officer Maras saw something wooden and metallic in the man's hand, he hit the man in the head with his revolver and kicked him in the midsection. As the man fell to the ground, he dropped a sledge hammer which he had been holding.

Officer Maras then turned to see if anyone else was inside the store. Satisfied that the man was alone, Officer Maras turned around and observed the man running off. Officers responding to Ms. Kelly's call arrived and a search for the man began. Approximately one hour later, the man, still wearing the handcuff on his left hand, was captured in a nearby apartment complex. At trial, Officer Maras identified appellant as the man he encountered at the auto clinic.

▰ In his first assignment of error, appellant contends that the trial court erred in allowing an in-court identification of him by Ms. Kelly. During direct examination, Ms. Kelly identified appellant as the man that she saw outside the auto clinic with Officer Maras. However, during cross-examination Ms. Kelly admitted that her identification of appellant was actually based on the person she witnessed being taken into custody at the apartment complex. An unnecessarily suggestive pretrial show-up is in contravention of a defendant's right to due process. *Goudeau v. State*, 637 P.2d 859, 861 (Okl.Cr.1981). The pretrial identification process must be considered in such a way as to avoid any possibility of prejudice and to insure that any in-court identification is based on what the witness saw at the commission of the crime rather than at the lineup. *Id. See also Frick v. State*, 634 P.2d 738, 742 (Okl. Cr.1981). Clearly, in the present case, Ms. Kelly's in-court identification of appellant

was not based on what she observed at the commission of the crime.

▰ The State contends that the identification in this case is similar to the identification procedure in *Plunkett v. State*, 719 P.2d 834 (Okl.Cr.1986). In *Plunkett*, after arresting the defendant within thirty minutes of the crime, the police brought him to the victim's house for identification. This Court found that in some circumstances, a one-man showup occurring near the time of the alleged criminal act insures accuracy of identification rather than misidentification. However, in *Plunkett*, the victim had stood face to face with the defendant for several minutes during the commission of the offense and he fit the description she had given the police. In the present case, Ms. Kelly admitted that she never got a full facial view of the appellant and she claimed that appellant was wearing a white T-shirt during the incident, while Officer Maras testified that appellant was wearing a black short sleeve shirt. Thus, we find that the identification of appellant by Ms. Kelly was error. However, based on the strong identification of appellant by Officer Maras and the other evidence connecting appellant to the crime, we find the errors to be harmless beyond a reasonable doubt. 20 O.S.1981, § 3001.1. We also find that the trial court's decision not to give appellant's requested cautionary eyewitness instruction was proper due to Officer Maras' positive identification. *See Johnson v. State*, 727 P.2d 965, 970 (Okl.Cr.1986).

▰ Appellant next contends that there was insufficient evidence to support the charge of Assault With a Dangerous Weapon. Specifically, appellant claims that since the object held in his hand was never swung, the jury could not have reasonably inferred that an assault had occurred. When the sufficiency of the evidence is challenged on appeal, this Court must determine whether, after viewing the evidence in the light most favorable to the State, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. To perform an act towards the commission of a battery is to commit an assault. *Joplin v. State*, 663

P.2d 746, 747 (Okl.Cr.1983). Officer Maras testified that he reacted when he observed appellant raise his arm. Assault is a crime that can be proved by showing a general intent to perform the act. *Id.* We find sufficient evidence from which a rational trier of fact could have found the essential elements of the crime charged beyond a reasonable doubt.

Appellant further argues that the trial court erred in giving a flight instruction because it was improperly stressing particular evidence to the jury. However, a review of the record reveals that appellant failed to object to the instruction at trial, thereby waiving all but fundamental error. *Ballou v. State,* 694 P.2d 949, 951 (Okl.Cr.1985). Furthermore, it is well-settled that this Court has approved of a flight instruction when justified by the evidence. *Scott v. State,* 751 P.2d 758 (Okl. Cr.1988). We find no error.

Appellant next complains that certain comments of the prosecutor denied him a fair trial. Initially, we note that some of the comments of which appellant now complains were not objected to at trial, thereby waiving all but fundamental error. *Weatherly v. State,* 733 P.2d 1331, 1338 (Okl.Cr. 1987). We have also reviewed the comments which were met with contemporaneous objections and find them to be reasonable comments on the evidence and within the wide range of argumentation allowed both sides during closing argument. *Capps v. State,* 674 P.2d 554, 557 (Okl.Cr. 1984).

In his next proposition, appellant claims that his conviction for Escape from Lawful Custody should not have been enhanced by his prior felony convictions. Appellant reasons that the charge of Escape from Lawful Custody, 21 O.S.1981, § 444, is analogous to the charge of Escape from a Penal Institution under 21 O.S.1981, § 443, and that a person's escape conviction cannot be enhanced by the conviction for which he was serving at the time he escaped. While appellant argues the correct application of the law as it relates to § 443, *see Moore v. State,* 736 P.2d 996, 999 (Okl.Cr.1987), the fatal flaw in his argument as it relates to § 444 is that a prior conviction is not an element of Escape from Lawful Custody. Therefore, we find no error in the enhancement of his conviction for Escape from Lawful Custody by his former felony convictions.

Appellant complains that the trial court erred in refusing to give his requested Instructions on the lesser included offenses of Illegal Entry and Assault Upon a Police Officer. Initially, we note that Illegal Entry is not a lesser included offense of Burglary or Attempted Burglary. *Smith v. State,* 695 P.2d 1360, 1363 (Okl.Cr.1985). Moreover, the evidence developed at trial did not support the crime of Illegal Entry. Ms. Peggy Gaycan, the manager of B.J.'s Auto Clinic, testified that entry into the store had been made through a broken out window. Furthermore, the evidence produced at trial did not support the charge of Assault Upon a Police Officer. It was uncontradicted that appellant attempted to strike Officer Maras with a sledge hammer. Where there is no evidence to support a lower degree of the crime charged or lesser included offense, it is not only unnecessary to instruct thereon, the court has no right to ask the jury to consider the issue. *Bennett v. State,* 743 P.2d 1096, 1098 (Okl.Cr.1987). We find no error.

Appellant asserts that the trial court erred in allowing improper character evidence to be introduced during the second stage of trial. The court had sustained a motion in limine during the first stage of the trial but allowed, over objection, the improper character evidence during the second stage. Through the testimony of Officer Steve Malone, the State introduced evidence of statements made by appellant after he was placed under arrest. Officer Malone testified that appellant was "very loud, profane, abusive and very violent in his nature." Officer Malone continued, appellant "had to be restrained several times to keep—and he attempted to open the car door to get out." Officer Malone further testified that appellant "made mention to the fact that he didn't care, that he had just been arrested and he had 30 years hanging

over him and that he was still on 10 years probation and a little more time wouldn't matter." Finally, Officer Malone stated that appellant "made the statement to us that we never would have caught [sic] if he would have stayed in the storm sewer."

 After a review of the record, we find this evidence to be irrelevant as to the second stage proceedings. During the enhancement stage of a bifurcated proceeding, the only issue is the existence of a prior conviction on which enhancement can be based. *Pickens v. State*, 600 P.2d 356, 359 (Okl.Cr.1979). The appellant did not take the stand during the trial; therefore, his character never became an issue. Clearly, the testimony of Officer Malone did not concern the existence of a prior conviction on which enhancement could be based and the admittance of such evidence was error. Pursuant to the authority granted this Court at 22 O.S.1981, § 1066, we hereby modify appellant's sentences to twenty (20) years for Count I, thirty (30) years for Count II and twenty (20) years for Count III. This is the minimum on Counts I and III, but, due to the facts, Count II should not be so reduced but is set slightly above the minimum.

Finally, appellant contends that based on the facts and circumstances of this' case, his sentence is excessive. Based on the modification in the previous assignment of error, we find this proposition moot.

As MODIFIED, the judgment and sentence is AFFIRMED.

PARKS, P.J., and LANE, V.P.J., concur.

BRETT, and LUMPKIN, JJ., concur in result.

BRETT, Judge: concurring in results.

While I agree that this case should be affirmed, I disagree with the conclusion of the majority that a cautionary instruction on eyewitness testimony was not warranted. The majority reasons that such an instruction was not necessary because Officer Maras' identification of the appellant was positive. In support of this conclusion the majority cites *Johnson v. State*, 727 P.2d 965 (Okl.Cr.1986). However, *Johnson* is distinguishable from the present case because in *Johnson*, only one person identified the defendant, and that person's identification was positive. In the present case two persons identified the appellant, Officer Maras and Ms. Kelly. While Officer Maras' identification of the appellant was positive, Ms. Kelly's was not. Insofar as there were serious questions concerning the reliability of Ms. Kelly's identification, I would find that an instruction on eyewitness identification was warranted. *See McDoulett v. State*, 685 P.2d 978 (Okl.Cr. 1984). However, because I agree with the majority that this error was harmless beyond a reasonable doubt due to the other strong evidence connecting the appellant to the commission of the crime, I agree that this case should be affirmed.