**Michael Ralph ANDERSON, Appellant,**

v.

**The STATE of Oklahoma, Appellee.**

No. F–93–1032.

Court of Criminal Appeals of Oklahoma.

Oct. 30, 1995.

Damon Cantrell, Assistant Public Defender, Oklahoma City, for Appellant At Trial.

Lisa Hammond, Asst. District Attorney, Oklahoma City, for State At Trial.

Pamela Wagner, Assistant Public Defender, Oklahoma City, for Appellant On Appeal.

Susan Brimer Loving, Attorney General of Oklahoma, Alecia A. George, Assistant Attorney General, Oklahoma City, for State On Appeal.

## SUMMARY OPINION

LUMPKIN, Judge:

Appellant Michael Ralph Anderson was convicted by an Oklahoma County jury in Cause No. CF–92–5744 of Count I, Trafficking in Illegal Drugs (63 O.S.1991, § 2–415) and Count II, Possession of a Controlled Dangerous Substance without a Tax Stamp (68 O.S.1991, § 450.3). The jury recommended punishments of thirty (30) years imprisonment and a $50,000 fine for Count I and five (5) years imprisonment for Count II. The trial court sentenced accordingly, ordering the sentences to run concurrently. It is from this judgment and sentence that Appellant appeals.

Appellant raises the following propositions of error in support of his appeal:

I. The evidence was insufficient to prove that Appellant was guilty of trafficking the drug LSD;

II. The Oklahoma statute dealing with trafficking creates a factual presumption which is in violation of Appellant's constitutional right to due process; ·

III. The prosecutor's misconduct resulted in the violation of Appellant's constitutional right to an impartial trial.

In his second proposition of error, Appellant contends the Legislature violated his right to Due Process by creating an irrebuttable factual presumption that one who possesses a larger amount of drug intends to disseminate it into society. He complains that one who possesses a larger quantity of drug is punished more stringently based not on the amount of drug, but on a presumption he possesses that amount of drug to sell it to others.

Unfortunately for Appellant, the plain language of the statute does not support his argument. The statute at the time of the crime read:

A. The provisions of the Trafficking in Illegal Drugs Act, Section 2–414 et seq. of this title, shall apply to persons convicted

of violations with respect to the following substances:

. . . .

5. Lysergic acid diethylamide (LSD);

. . . .

B. Except as otherwise authorized by the Uniform Controlled Dangerous Substances Act, Section 2–101 et seq. of this title, it shall be unlawful for any person to:

1. Knowingly distribute, manufacture, bring into this state or possess a controlled substance specified in subsection A of this section in the quantities specified in subsection C of this section; or

2. Possess any controlled substance with the intent to manufacture a controlled substance specified in subsection A of this section in quantities specified in subsection C of this section; or

3. Use or solicit the use of services of a person less than eighteen (18) years of age to distribute or manufacture a controlled dangerous substance specified in subsection A of this section in quantities specified in subsection C of this section.

Violation of this section shall be known as "trafficking in illegal drugs".

Any person who commits the conduct described in paragraph 1, 2 or 3 of this subsection and represents the quantity of the controlled substance to be an amount described in subsection C of this section shall be punished under the provisions appropriate for the amount of controlled substance represented, regardless of the actual amount.

C. In the case of a violation of the provisions of subsection B of this section, involving:

. . . .

5. Lysergic acid diethylamide (LSD):

a. one (1) gram or more of a substance containing a mixture or substance containing a detectable amount of lysergic acid diethylamide (LSD), such violation shall be punishable by a fine of not less than Fifty Thousand Dollars ($50,-000.00) and not more than One Hundred Thousand Dollars ($100,000.00), or

b. ten (10) grams or more of a substance containing a mixture or substance containing a detectable amount of lysergic acid diethylamide (LSD), such violation shall be punishable by a fine of not less than One Hundred Thousand Dollars ($100,000.00) and not more than Two Hundred Fifty Thousand Dollars ($250,000.00);

. . . .

D. Any person who violates the provisions of this section with respect to a controlled substance specified in subsection A of this section in a quantity specified in subsection C of this section shall, in addition to any fines specified by this section, be punishable by a term of imprisonment as follows:

1. Not less than twice the term of imprisonment provided for in Section 2–401 of this title [1];

2. If the person has previously been convicted of one violation of this section or has been previously convicted of a felony violation of the Uniform Controlled Dangerous Substances Act arising from separate and distinct transactions, not less than three times the term of imprisonment provided for in Section 2–401 of this title; and

3. If the person has previously been convicted of two or more violations of this section or any provision of the Uniform Controlled Dangerous Substances Act which constitutes a felony, or a combination of such violations arising out of separate and distinct transactions, life without parole.

The terms of imprisonment specified in this subsection shall not be subject to statutory provisions for suspension, deferral or probation, or state correctional institution earned credits accruing from and after November 1, 1989, except for the achievement earned credits authorized by subsection F of Section 138 of Title 57 of the Oklahoma Statutes. To qualify for such achievement credits, such inmates must also be in compliance with the standards for Class level 2

1. Section 2–401 provides a person convicted for a first offense "shall be sentenced to a term of imprisonment for not less than five (5) years nor more than life [plus fine]."

behavior, as defined in subsection C of Section 138 of Title 57 of the Oklahoma Statutes.

Persons convicted of violations of this section shall not be eligible for appeal bonds.

63 O.S.1991, § 2–415.

From the plain language of the statute, we conclude the term "trafficking" as used in this statute does not create a presumption a defendant sold the drugs or intended to sell drugs. Rather, the Legislature, in one part of the statute, has defined "trafficking" as possessing specific amounts of a controlled dangerous substance. The statute merely sets forth guidelines for punishment, and represents a determination by the Legislature that "those who possess [a drug in excess of a specified amount] deserve a stiff punishment." *United States v. Maske*, 840 F.Supp. 151, 158 (D.D.C.1993). *See also Chapman v. United States*, 500 U.S. 453, 465, 111 S.Ct. 1919, 1927, 114 L.Ed.2d 524, 538 (1991) (Noting that every person has the fundamental right to a trial at which he must be proven guilty beyond a reasonable doubt, adding: "[b]ut a person who *has* been so convicted is eligible for, and the court may impose, whatever punishment is authorized by statute for his offense, so long as that penalty is not cruel and unusual, . . . and so long as the penalty is not based on an arbitrary distinction that would violate the Due Process Clause . . ."); *United States v. Wesley*, 990 F.2d 360, 363 (8th Cir.1993) (In response to an assertion by an appellant the jury was required to presume a party possessing more than 50 grams of cocaine base was selling it, the court responded: "[t]he statute, however, does not create that presumption. The statute sets forth guidelines for punishment; it does not make any presumptions which may or may not be rebutted."); *United States v. Proyect*, 989 F.2d 84, 88 (2d Cir.), *cert. denied,* — U.S. —, 114 S.Ct. 80, 81, 126 L.Ed.2d 49 (1993); *United States v. Murphy*, 979 F.2d 287, 290–91 (2d Cir.1992); *Traylor v. State*, 458 A.2d 1170, 1177 (Del.1983) (" 'Trafficking' . . . is not an element of the offense but the name of the crime, as the statute makes clear. Furthermore, the statute contains no presumption, rebuttable or conclusive, as alleged by Traylor.").

Accordingly, this proposition is without merit.

After a thorough consideration of each of the propositions and the entire record before us on appeal, including the original record, transcripts and briefs of the parties, we have determined that neither reversal nor modification is required under the law and evidence. Accordingly, Appellant's convictions are **AFFIRMED**.

## DECISION

The Judgment and Sentence of the trial court is **AFFIRMED**.

JOHNSON, P.J., CHAPEL, V.P.J., and LANE and STRUBHAR, JJ., concur.